**Affirmed and Memorandum Opinion filed June 14, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00385-CV

## TERRY MURPHY, Appellant

### V.

## BILL UNDERHILL, ALLIANCE ROOFING & CONSTRUCTION, Appellee

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Cause No. 1087643**

## M E M O R A N D U M   O P I N I O N

In this breach-of-contract case, the plaintiff/appellee Bill Underhill d/b/a Alliance Roofing & Construction prevailed in his claim against defendant/appellant Terry Murphy in a Harris County justice court, alleging that Murphy failed to pay a 25% cancelation fee on a contract to repair Murphy's roof. After the justice court ruled in Murphy's favor, Underhill appealed to the county court at law for trial de

novo. After a non-jury trial, the county court at law rendered judgment in Underhill's favor.

On appeal from the county court at law's judgment, Murphy contends that the document he and Underhill signed was not a contract but an unenforceable proposal. Murphy further contends that the trial court abused its discretion in refusing to admit into evidence a competing proposal for the work. Finally, Murphy asks that we award him attorney's fees and sanction Underhill for bringing this suit. Because the omitted portions of the reporter's record presumably support the trial court's judgment, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

After Murphy asked Underhill to inspect his roof, Underhill told Murphy that the roof had storm damage for which Murphy may have an insurance claim. Underhill and Murphy signed an agreement under which Underhill agreed to file the claim with Murphy's insurance carrier, and Murphy agreed to let Underhill perform the work if the insurer approved the claim, with Murphy being responsible to pay only the amount of his insurance deductible. They further agreed that if Murphy's insurer approved the claim and Murphy canceled the agreement more than three days after it was signed, then Murphy himself would pay Underhill a 25% cancelation fee.

Eight days after Murphy and Underhill signed the agreement, the insurer approved the claim. More than two weeks after the claim was approved, Underhill sent Murphy an invoice for the work to be performed in accordance with the insurer's "loss sheet." When Murphy received the invoice, he immediately responded that he was canceling the agreement.

---

[1] We describe the facts as found by Harris County Civil Court at Law No. 2.

2

Underhill sued Murphy in a Harris County justice court to recover the agreed-upon cancelation fee. The justice court ruled in favor of Murphy, and Underhill appealed to a Harris County civil court at law. The appeal was decided by a nonjury trial de novo, and the trial court rendered judgment against Murphy for $3,465.50. At Murphy's request, the trial court rendered findings of fact and conclusions of law. The trial court's findings support the judgment the trial court rendered, nor does Murphy contend otherwise. Murphy requested amended findings of fact and conclusions of law, but the trial court issued nothing further.

## II. ISSUES PRESENTED

In his first, second, and fourth issues, Murphy challenges the trial court's determination that Murphy and Underhill had an enforceable contract; we address all three of these issues together.[2] In his third issue, he argues that the trial court abused its discretion in refusing to admit evidence of a competing proposal Murphy allegedly received in the time between signing the agreement with Underhill and receiving Underhill's invoice. Although not presented as a separate issue, Murphy asked in his prayer for relief that we award him attorney's fees and sanction Underhill on the ground that Underhill's contract claim is groundless and was

---

[2] Murphy states these issues as follows:

1. Whether a roof job proposal lacking cost of repairs submitted by Bill Underhill (Appellee) to home owner Murphy (Appellant) followed by a job estimate that was unambiguously rejected by the home owner rise to the level of an enforceable contract.

2. Whether the estimate that was sent on August 15, 2016 by Underhill which was rejected by Murphy within the hour created a contractual obligation.

. . . .

4. Whether the relationship between Underhil[l] and Murphy represent a failure of "meeting of the minds[" ]and the doctrine of agreement to agree.

Full capitalization omitted.

brought in bad faith for the purpose of harassment. We address the request for attorney's fees and sanctions together.

### III. CHALLENGES TO THE EXISTENCE AND ENFORCEABILITY OF THE CONTRACT

Although Murphy does not expressly challenge the legal or factual sufficiency of the evidence supporting any of the trial court's findings, he does ask that this court reverse the trial court's judgment and render a take-nothing judgment on Underhill's contract claim. Because he would be entitled to rendition of judgment only if the evidence were legally insufficient to support the trial court's findings, we construe this issue as a challenge to the legal sufficiency of the evidence. *See Onwudiegwu v. Dominguez*, No. 14-14-00249-CV, 2015 WL 4366213, *5 (Tex. App.—Houston [14th Dist.] July 16, 2015, no pet.) (mem. op.) (citing *Stevens v. Travelers Ins. Co.*, 563 S.W.2d 223, 233 (Tex. 1978)).

To analyze the legal sufficiency of the evidence, we review the record in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Evidence is legally sufficient if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We will conclude that the evidence is legally insufficient to support the finding only if (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810.

We cannot review the record of the trial in this case because no record was filed; indeed, the information sheet filed in this Court by the trial court's official court reporter reveals that no reporter's record was made. We were presented with the same situation in *Dongsheng Huang v. Riverstone Residential Group (Alexan Piney Creek)*, No. 14-11-00009-CV, 2011 WL 6003949, at \*2 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, pet. dism'd) (mem. op.). There, as here, the court reporter certified that no reporter's record of the bench trial existed. *Id.* We explained that, in the absence of a reporter's record, we must indulge every presumption in favor of the trial court's findings.[3] *Id.* (citing *Bryant v. United Shortline Inc. Assur. Servs., N.A.*, 972 S.W.2d 26, 31 (Tex. 1998); *see also Bryant*, 972 S.W.2d at 31 ("We indulge every presumption in favor of the trial court's findings in the absence of a statement of facts.");[4] *In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth

---

[3] We might be said to have a partial reporter's record, because the exhibits submitted at trial have been filed in the clerk's record, and the Texas Rules of Appellate Procedure treat trial exhibits as part of the reporter's record. *See* TEX. R. APP. P. 34.6(a) (stating that the reporter's record includes any of the trial exhibits designated by a party to the appeal). The result, however, would be the same. An appellant may request a partial reporter's record, but "must include in the request a statement of the points or issues to be presented on appeal and will then be limited to those points or issues." TEX. R. APP. P. 34.6(c)(1). If the appellant complies with the rule, then "[t]he appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues." TEX. R. APP. P. 34.6(c)(4). Even a late-filed statement of issues will support the presumption, absent some indication that the appellee was adversely affected by the delay. *See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (per curiam). But if the appellant entirely fails to submit a statement of the points or issues to be presented on appeal, "we must presume that the omitted portions of the record are relevant and would support the judgment." *Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 822 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The record before us does not contain the parties' agreement to a partial reporter's record or to a statement of the case. It also does not contain a statement of Murphy's issues to be presented on appeal. Thus, even if the trial exhibits included in the clerk's record were construed as a partial reporter's record, we still would be required to presume that the omitted portions of the reporter's record are relevant and support the trial court's judgment.

[4] What previously was called a "statement of facts" is now called the reporter's record. TEX. R. APP. P. 34 cmt. to 1997 change ("*Clerk's record* is substituted for *transcript*, and *reporter's record* is substituted for *statement of facts* throughout the rules."); *see also Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 n.22 (Tex. 2017) (noting that a "statement of facts" is now called

2008, pet. denied) (stating that, in the absence of a reporter's record, the court could not review the appellant's challenge to the sufficiency of the evidence). We accordingly presume that the evidence presented at trial supports the trial court's findings, and we overrule Murphy's first, second, and fourth issues.

## IV. CHALLENGE TO THE EXCLUSION OF EVIDENCE

We review the trial court's exclusion of evidence for abuse of discretion. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 161 (Tex. 2015). We will not reverse a judgment due to the erroneous exclusion of evidence unless the ruling probably resulted in an improper judgment. *Id.*

In the absence of a reporter's record, we cannot say that the trial court erred in excluding the evidence or that the ruling was harmful. *See Brentwood Fin. Corp. v. Lamprecht*, 736 S.W.2d 836, 843 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) ("We presume that the rulings of the trial court are correct, and we will consider only matters shown by the record."). Because we must presume that a record of the trial would have supported the trial court's ruling, we overrule Murphy's third issue.

## V. REQUEST FOR ATTORNEY'S FEES AND SANCTIONS

In his prayer for relief, Murphy asks that we sanction Underhill pursuant to Texas Civil Practice and Remedies section 9.012 and order Underhill to pay "Appellee's reasonable attorney fees." Because Murphy pleaded in the trial court for sanctions and for an order that Underhill be ordered to pay Murphy's attorney's fees, we assume that Murphy meant to request that we order Underhill to pay "Appellant's reasonable attorney's fees." Murphy sought sanctions under Texas Civil Practice and Remedies Code section 9.012 in the county court at law, and we

---

the reporter's record); *Nejnaoui v. State*, 44 S.W.3d 111, 115 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (same).

construe this request as an appellate challenge to the county court at law's denial of this request.

Here, too, we are bound by the presumption arising from the omitted reporter's record. We must presume that a record of the trial proceedings would have supported the county court at law's refusal to award Murphy the requested relief. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("Where the record is ambiguous or silent, the presumption of validity will supply by implication every proof, element, factual finding, or proper application of the law needed to support the judgment.").

We accordingly reject this appellate challenge.

## VI. CONCLUSION

Because we presume that a reporter's record of the trial would support the trial court's rulings, we affirm the trial court's judgment, including its failure to award Murphy attorney's fees or to sanction Underhill.


/s/    Tracy Christopher
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison.