# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00810-CV

---

**R. V., Jr., Appellant**

**v.**

**S. V., Appellee**

---

### FROM THE 455TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-22-006452, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

R.V. (Father) appeals the trial court's final order terminating his parental rights to his child, B.J.V. In five issues, Father contends that the trial court abused its discretion by failing to appoint an attorney to represent him; failing to appoint an amicus attorney or attorney ad litem for B.J.V.; refusing to set aside a mediated settlement agreement (MSA); and, alternatively, by rendering a judgment that varies from the terms of the MSA. Finally, to the extent the trial court concluded that evidence other than the MSA supports termination, Father contends that the evidence is legally and factually insufficient to show that statutory grounds for termination exist and that termination of his parental rights is in B.J.V.'s best interest. *See* Tex. Fam. Code § 161.001(b)(1), (2). We affirm the trial court's termination order.

## BACKGROUND

B.J.V.'s mother (Mother) filed a petition to terminate Father's parental rights after he was arrested and convicted in New Hampshire for possession of child sex-abuse images, distribution of child sex-abuse images, indecent exposure, and violation of privacy. At the time of his arrest, the family was residing in New Hampshire, and B.J.V. was four years old. The arrest followed law enforcement's discovery of thousands of sexually explicit images of children on Father's computer, including an image taken by Father of his exposed penis in the presence of one of B.J.V.'s friends, a six-year-old girl. In addition, law enforcement discovered that Father had set up a phone in a bathroom in the family's house for the purpose of recording another six-year-old friend of B.J.V. as she urinated.

At the final hearing, the trial court heard testimony from Mother, Father, and B.J.V.'s guardian ad litem. In addition, the trial court admitted into evidence a copy of an MSA, which had been signed by the parties, their attorneys, and the guardian ad litem. In the MSA, Father stipulated to termination under Section 161.001(b)(1)(Q) of the Texas Family Code—that is, that he "knowingly engaged in criminal conduct that has resulted in his conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date the petition was filed." *See* Tex. Fam. Code § 161.001(b)(1)(Q). The trial court also admitted documents related to Father's convictions, including certified copies of the probable cause affidavits, complaints, indictments, and sentencing judgments.

Following the hearing, the trial court signed a final order terminating Father's parental rights based on its findings that statutory grounds exist under both subsection (Q) and subsection (L) of Section 161.001(b)(1) and that termination of the parent-child relationship is in

2

B.J.V.'s best interest.[1]  Upon Father's request, the trial court issued findings of fact and conclusions of law.  *See* Tex. R. Civ. P. 296.  In part, the trial court found that (1) "the [MSA] dated August 15, 2023, between the parties is valid and enforceable and that [Father] failed to present sufficient evidence to support the contention that the [MSA] was not valid"; (2) "even if the [MSA] was not valid, sufficient evidence was present to support the requisite findings for termination by clear and convincing evidence"; and (3) "there is clear and convincing evidence that the termination of the parent-child relationship between [Father] and [B.J.V.] is in the best interest of the child."  This appeal followed.

## STANDARD OF REVIEW

"While parental rights are of constitutional magnitude, they are not absolute." *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002).  To terminate a parent-child relationship, the party seeking termination must prove by clear and convincing evidence that (1) the parent's acts or omissions constitute at least one of the enumerated statutory grounds for termination, and (2) termination is in the child's best interest.  Tex. Fam. Code § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).  Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code § 101.007.  "This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018).

---

[1]  Under subsection (L), the trial court may terminate the parent-child relationship when the parent is convicted under one of several enumerated sections of the Penal Code, "or under a law of another jurisdiction that contains elements that are substantially similar to the elements of an offense under [the enumerated sections of the Penal Code]," including a conviction for indecency with a child, under section 21.11, and for possession of child pornography, under section 43.26. Tex. Fam. Code § 161.001(L)(xiii).

In an appeal from an order terminating parental rights, we apply a standard of review that reflects this heightened standard of proof. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). In this context, "[t]he distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to the finding may be considered." *In re A.C.*, 560 S.W.3d at 631. When evaluating the legal sufficiency of the evidence, we view all the evidence in the light most favorable to the finding and consider any undisputed contrary evidence to decide whether "a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *Id.* A factual-sufficiency review, in contrast, requires "weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id.* "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id.*

**DISCUSSION**

*Sufficiency of the Evidence*

We turn first to Father's fourth issue on appeal, in which he asserts that the evidence is legally and factually insufficient to support the trial court's findings that "even if the [MSA] was not valid," the predicate grounds for termination exist under subsection (Q) and subsection (L) and that termination is in B.J.V.'s best interest.

Subsection Q permits a trial court to terminate the parent-child relationship when the parent knowingly engaged in criminal conduct that has resulted in the parent's (1) conviction of an offense, and (2) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition. Tex. Fam. Code § 161.001(b)(1)(Q). Under subsection (Q), the requirement of clear and convincing evidence of an "inability to care for the

4

child" is not met on the mere showing of prolonged incarceration. *In re J.G.S.*, 574 S.W.3d 101, 118 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citations omitted). "Otherwise, the termination of parental rights could become an additional punishment automatically imposed along with imprisonment for almost any crime." *Id.* (quoting *In re E.S.S.*, 131 S.W.3d 632, 639 (Tex. App.—Fort Worth 2004, no pet.)). Therefore, to determine if termination is warranted under subsection (Q), a court must analyze the evidence under a three-step burden-shifting framework. *Brickley v. Joseph-Stephen,* No. 03-07-00574-CV, 2023 Tex. App. LEXIS 1367, at *5 (Tex. App.— Austin Mar. 2, 2023, pet. denied) (mem. op.). In the first step, the party moving for termination must produce evidence of criminal conduct by the parent that results in confinement for two or more years. *Id.* If this burden is met, the burden shifts to the parent to produce some evidence of how he or she will provide care for the child during the period of confinement or that he or she has arranged with another person for that person to provide care for the child during the period of confinement. *Id.* If the parent meets that burden of production, the third step shifts the burden to the party seeking to terminate parental rights. *Id.* That party then has the burden of persuasion to show that the parent's provision or arrangement would not adequately satisfy the parent's duty to the child. *In re J.G.S.*, 574 S.W.3d at 120.

The undisputed evidence presented at the final hearing establishes that Father was convicted of crimes that resulted in his incarceration for a minimum of two years. In his testimony, Father acknowledged that he pleaded guilty and was convicted under New Hampshire law of possession of child-abuse sex images, distribution of child-abuse sex images, indecent exposure, and violation of privacy. The sentencing documents, signed by the New Hampshire trial judge and admitted without objection at the final hearing, show that Father was sentenced to imprisonment for a minimum of 7.5 years and a maximum of 15 years.

Because Mother met her initial burden, the burden shifted to Father to produce evidence showing how he would provide care for B.J.V. during his incarceration. Factors that a court may consider in determining whether there is an "inability to care" include "the availability of financial and emotional support from the incarcerated parent." *Lewis v. Texas Dep't of Fam. & Protective Servs*., No. 03-07-00510-CV, 2008 Tex. App. LEXIS 6457, at *15 (Tex. App.—Austin 20, 2008, no pet.) (mem. op.). Evidence supporting a subsection (Q) finding against a parent includes evidence showing that the parent has not made efforts to arrange for the child's care, has no family members with whom the parent would want the child placed, has not provided the names of any potential placements for the child, and has not provided financial support or health insurance for the child. *Brickley*, 2023 Tex. App. LEXIS 1367, at *6 (citations omitted).

In this case, Mother testified that she has not received any financial support from Father since his arrest and, moreover, that she is currently having to pay Father's student loans, which she cosigned during their marriage. In his testimony, Father did not dispute that he has not provided financial support since his arrest, and in his appellate briefing, he asserts that he is currently indigent. As to emotional support, Father testified that he would support B.J.V. during his incarceration by writing letters and sending gifts. In addition, as Father points out, the guardian ad litem testified that "[Father] told me that his mother, the paternal grandmother, Karen, would be able to pick up [B.J.V.] in Texas . . . that she would be able to bring the child to him in prison to see him." However, other than potentially facilitating visits, Father did not present any evidence suggesting that his relatives would assist with B.J.V.'s care during his incarceration. Finally, Mother testified that even before his incarceration, Father was a "hands off" parent, meaning he did not help with basic childcare duties. Based on this evidence, under the applicable standards of review, we conclude that the evidence is legally and factually sufficient to support the trial court's

6

finding that Father would be unable to care for B.J.V. during his confinement and, consequently, that termination is warranted under subsection (Q).

Father also argues that the evidence is insufficient to support termination under subsection (L). In response, the Department agrees that the evidence is insufficient to support the trial court's finding as to subsection (L). Because a single predicate finding under Section 161.001(b)(1) along with a best-interest finding is sufficient to support termination, *see Spurck v. Texas Dep't of Fam. & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.), we need not decide this issue, *see* Tex. R App. P. 47.1; *In re M.T.C.*, No. 04-16-00548-CV, 2017 Tex. App. LEXIS 1257, at *3 n.3 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.) (declining to examine whether evidence supported termination under subsection (O) where Department conceded that evidence was insufficient under subsection (O) and sufficient evidence supported other ground).

Next, we consider Father's argument that the evidence is factually and legally insufficient to support the trial court's best-interest finding. *See* Tex. Fam. Code § 161.001(b)(2). We review a factfinder's best-interest finding in light of the non-exhaustive list of considerations set out in *Holley v. Adams*: the child's wishes, the child's emotional and physical needs now and in the future, emotional or physical danger to the child now and in the future, the parenting abilities of the parties seeking custody, programs available to help those parties, plans for the child by the parties seeking custody, the stability of the proposed placement, the parent's acts or omissions indicating that the parent-child relationship is improper, and any excuses for the parent's conduct. 544 S.W.2d 367, 371-72 (Tex. 1976); *see A.C.*, 560 S.W.3d at 631; *E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012); *C.H.*, 89 S.W.3d at 27. The *Holley* factors are not exhaustive, not all factors must be proved, and a lack of evidence about some of the factors does not "preclude a factfinder from

7

reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence [is] undisputed that the parental relationship endangered the safety of the child." *C.H.*, 89 S.W.3d at 27. "We must consider 'the totality of the circumstances in light of the *Holley* factors' to determine whether sufficient evidence supports" the best-interest finding. *In re J.M.G.*, 608 S.W.3d 51, 54 (Tex. App.—San Antonio 2020, pet. denied) (quoting *In re B.F.*, No. 02-07-00334-CV, 2008 WL 902790, *11 (Tex. App.—Fort Worth Apr. 3, 2008, no pet.) (mem. op.)). Proof concerning the statutory predicate under section 161.001(b)(1) does not relieve the Department of proving that termination is in the best interest of the child, but "the same evidence may be probative of both issues." *C.H.*, 89 S.W.3d at 28.

As previously discussed, the trial court heard evidence that Father committed offenses involving the abuse of children. Moreover, some of those offenses involved friends of B.J.V. and occurred while B.J.V. was also in the home. In addition, Mother testified that soon after Father's arrest, she and B.J.V. came to Texas to live with her parents and that they have made a new life in Texas. Mother testified that B.J.V. has bonded with his maternal grandparents, is doing well in school, and has been seeing a therapist consistently since arriving in Texas. Similarly, the guardian ad litem testified that B.J.V. was adjusting well to his new life and that a continued relationship with his Father—who "abused the trust of those closest to him"—would negatively impact his emotional well-being.

Considering all the evidence in the light most favorable to the best-interest finding, and considering undisputed contrary evidence, we conclude a "reasonable factfinder could form a firm belief or conviction" that termination of Father's parental rights is in B.J.V.'s best interest. *See A.C.*, 560 S.W.3d at 630-31. In addition, viewing the evidence in a neutral light and weighing all the evidence, we conclude that the disputed evidence that a reasonable factfinder could not have

credited in favor of the best-interest finding is not so significant that the factfinder could not have formed a firm belief or conviction that termination of Father's parental rights was in BJ.V.'s best interest. *See id.* at 631. We overrule Father's fourth issue on appeal.

In his second and third issues on appeal Father's challenges the trial court's consideration of the MSA. Specifically, in his third issue, Father asserts that the trial court erred by refusing to set aside the MSA because, according to Father, the evidence establishes that it was a product of "fraud, duress, coercion, or other dishonest means." In his second issue, Father complains, in the alternative, that the trial court abused its discretion by rendering a judgment that varied from the terms of the MSA. That is, Father contends that the trial court abused its discretion by finding that termination was warranted under subsection (L) because the MSA stipulated that termination was warranted solely under subsection (Q).

Because we conclude that the evidence is sufficient to support termination under subsection (Q), even without considering the MSA and its stipulation as to subsection (Q), any error committed by the trial court in refusing to set aside the MSA is harmless. *See* Tex. R. App. P. 44.1(a). Similarly, because a finding that termination is warranted under subsection (Q) is sufficient to support termination, any error committed by the trial court in finding that termination was warranted under both subsection (Q) and subsection (L) is harmless. *Id.* Accordingly, we overrule Father's second and third issues on appeal.

*Procedural Challenges*

Finally, we consider two issues in which Father challenges the procedure under which the termination proceedings were conducted. First, Father complains that the trial court abused its discretion by failing to appoint an amicus attorney or attorney ad litem to represent B.J.V. in the proceedings. *See* Tex. Fam. Code § 107.002(c)(4) (providing that in termination

9

suit not filed by governmental entity "the court shall, unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests, appoint" either "(1) an amicus attorney; or (2) an attorney ad litem"). However, Father is raising this complaint for the first time on appeal. Because there is nothing in the record showing that Father ever objected to the trial court's failure to appoint an amicus attorney or attorney ad litem for B.J.V., we conclude that Father has failed to preserve this issue for appeal. *See* Tex. R. App. P. 33.1; *Rigal v. S.M.*, No. 03-10-00008-CV, 2010 Tex. App. LEXIS 6196, at \*6-7 (Tex. App.—Austin, July 29, 2010, no pet.) (mem. op.) (citing *In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005) (observing that "the rules governing error preservation must be followed in cases involving termination of parental rights")). We overrule Father's first issue.

Next, we consider Father's fifth issue, in which he contends that the trial court abused its discretion by denying his request for court-appointed counsel. Trial courts must appoint counsel for indigent parents in termination suits brought by a governmental entity. *See* Tex. Fam. Code §§ 107.013(a), .015(c) . Whereas, in private-termination suits, the appointment of counsel is discretionary and is not mandated by statute. *See id.* § 107.021; *In re J.C.*, 250 S.W.3d 486, 489 (Tex. App.—Fort Worth 2008, pet. denied).

Even though not required by statute, because of the important interests at stake, the appointment of counsel may be required by due process. *In re J.E.D.*, No. 11-19-00166-CV, 2019 Tex. App. LEXIS 9367, at \*8 (Tex. App.—Eastland Oct. 24, 2019, no pet.) (mem. op.) (citing *Lassiter v. Department of Soc. Servs. of Durham Cty., N.C.*, 452 U.S. 18, 31-32 (1981)); *see also In re I.M.S.*, 679 S.W.3d 704, 715 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (recognizing that failure to appoint counsel in private-termination suit could violate due process). Trial courts determine whether to appoint counsel in private-termination suits on a case-by-case basis, *see*

10

*In re A.S.*, No. 02-24-00072-CV, 2024 Tex. App. LEXIS 3754, at *12 (Tex. App.—Fort Worth May 30, 2024, no pet.) (mem. op.), and on review, appellate courts consider the facts and circumstances of the case to determine whether the trial court's refusal to appoint counsel deprived the parent of due process, *In re J.E.D.*, 2019 Tex. App. LEXIS 9367, at *8 (citing *Lassiter*, 452 U.S. at 32). Specifically, we consider whether (1) the petition for termination contains allegations of neglect or abuse upon which criminal charges could be based, (2) expert witnesses are involved in the case, (3) the case present troublesome points of law, either procedural or substantive, (4) the record indicates that the absence of counsel's guidance rendered the proceedings fundamentally unfair, (5) the presence of counsel would have made determinative difference, and (6) the indigent parent demonstrates a clear desire to contest the proceedings. *In re L.F.*, No. 02-19-00421-CV, 2020 Tex. App. LEXIS 3879, at *31 (Tex. App.—Fort Worth May 7, 2020, no pet.) (mem. op.) (citing *Lassiter*, 452 U.S. at 32-33).

The facts and circumstances in this case do not show that Father was deprived of due process by the trial court's failure to appoint counsel. Although the statutory grounds upon which Mother sought termination were based on criminal charges, those criminal charges resulted in convictions before the final hearing, and there is no indication that further charges could result from the evidence presented at trial. In addition, no expert testimony was involved in the case. As to whether the absence of appointed counsel rendered the proceedings fundamentally unfair, the record shows that Father had retained counsel for the majority of the termination proceedings, from the time he filed his answer in October 2022 until September 2023. Father voluntarily moved to dismiss his retained attorney shortly after he and his attorney signed the MSA. Father requested that the court appoint him an attorney to assist him in challenging the MSA because, according to his motion for appointment of counsel, he and his retained counsel had an "irreconcilable

11

breakdown" over whether to challenge the validity of the MSA. However, as previously discussed, Mother presented evidence independent of the MSA that was sufficient to establish that Father's parental rights should be terminated. Specifically, although Father clearly contested the termination of his parental rights, Mother presented evidence showing that Father would be confined for more than two years and that he had not made any arrangements to care for his son, financially or emotionally.

Based on the record before us, we cannot conclude that the absence of counsel's guidance rendered the proceedings fundamentally unfair or that the presence of counsel would have made a determinative difference. *See Lassiter*, 452 U.S. at 33. We conclude that the trial court did not abuse its discretion in denying Father's request for court-appointed counsel. We overrule Father's fifth issue on appeal.

## CONCLUSION

Having overruled Father's issues on appeal, we affirm the trial court's termination order.

_____

Chari L. Kelly, Justice

Before Justices Baker, Triana, and Kelly

Affirmed

Filed: August 30, 2024

12